FILED

JUL 31 PM 3: 02

U.S. BANKRUPTCY COURT
MIDDLE DISTRICT OF TN.

| | |
|---|---|
| IN RE: | ) |
| | )    Case No. O2- 08919-GP3-11 |
| AMERICAN HOMEPATIENT, INC., et al. | )    Jointly Administered |
| | )    Chapter 11 |
| Debtors. | ) |

## APPLICATION OF DEBTORS TO EMPLOY
## HOULIHAN LOKEY HOWARD & ZUKIN CAPITAL AS FINANCIAL ADVISORS

American HomePatient, Inc. and certain of its subsidiaries (collectively the ("Debtors"),

request the Court approve the employment and retention of Houlihan Lokey Howard & Zukin

Capital ("Houlihan") as financial advisors in these Chapter 11 Cases, pursuant to Sections 327

and 328(a) of the Bankruptcy Code, 11 U.S.C. § § 101-1330 (the "Bankruptcy Code") and Rules

2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). In

support of this Application, the Debtors (i) submit the Affidavit of Patrick Hurst, a member of

Houlihan (the "Houlihan Affidavit"), filed simultaneously herewith and incorporated herein by

reference; and (ii) respectfully represent as follows:

### I. JURISDICTION

1.    This Court has jurisdiction over the subject matter of this Motion pursuant to 28

U.S.C. §§ 157 and 1334. Venue is proper in this Court pursuant to 28 U.S.C. §1409(a). This is a

core proceeding pursuant to 28 U.S.C. §157(b)(2)(A) and (O). The Court possesses the requisite

authority to grant the relief requested herein pursuant to Sections 105 and 1107 of the

Bankruptcy Code and Federal Rules of Bankruptcy Procedure.

17

## II. BACKGROUND

2.      On the date hereof (the "Petition Date" or "Commencement Date"), each of the Debtors filed a voluntary petition for relief, and thereby commenced a case under Chapter 11, Title 11, United States Code (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Middle District of Tennessee (the "Court"). Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors are operating their businesses and managing their property as debtors in possession.

3.      No trustee or examiner has been appointed, and no official committee of creditors or equity interest holders has yet been established.

4.      The Debtors filed with the Petitions a Motion for an Order Authorizing Joint Administration of Chapter 11 Cases Pursuant to Federal Rule of Bankruptcy Procedure 1015(b).

5.      Debtor American HomePatient, Inc., a Delaware corporation, through its subsidiaries and affiliates has 286 retail business locations in 35 states. The Company's corporate offices and headquarters are located in Brentwood, Tennessee. The stock of American HomePatient, Inc. is publicly traded under the symbol AHOM in the OTC market.

6.      The Company is engaged in the business of providing home health care services and products, consisting primarily of respiratory and infusion therapies and the rental and sale of home medical equipment and home health care supplies. Most of these products and services are provided directly to the Company's customers in their homes.

7.      For the year ended December 31, 2001, home respiratory services, home infusion services and home medical equipment and supplies represented 60%, 17%, and 23% of revenues, respectively. Home respiratory services include oxygen systems, nebulizers, aerosol medications and home ventilators and are provided primarily to patients with severe and chronic pulmonary diseases. Home infusion services are used to administer nutrients, antibiotics and other

medications to patients with medical conditions such as neurological impairments, infectious diseases or cancer. The Company also sells and rents a variety of home medical equipment and supplies. including wheelchairs, hospital beds and ambulatory aids.

8.      The services and products provided by the Company are paid for primarily by Medicare, Medicaid and other third-party payors on a fee-for-service basis. The Company operates approximately 33 billing centers whose primary function is to bill and collect for the services rendered and products sold through the Company's retail centers.

9.      The Company has approximately 3,100 full-time employees, 150 part-time employees, and approximately 200 PRN (staff used an on "as needed" basis only).

10.      For the six-month period ending June 30, 2002, Debtors had consolidated net revenues of approximately $162 million and an EBITDA of approximately $23 million. The Company projects total net revenues for 2002 to be approximately $323 million. As of June 30, 2002, the Company's assets had a book value of approximately $269 million and its liabilities were approximately $322 million.

11.      On July 31, 2002, simultaneous with the filing of the voluntary petitions, Debtors filed a joint plan of reorganization. That plan provides for the continuation of the Debtors' businesses and proposes to pay all creditors of Debtors in full.

### III. APPLICATION TO RETAIN HOULIHAN

12.      The Debtors bring this Motion because of their pressing need to retain a financial advisor to assist them in the critical tasks associated with analyzing and implementing critical restructuring alternatives, and to help guide them through their reorganization efforts. As a result of their careful deliberations, and through the exercise of their business judgment, the Debtors determined that Houlihan Lokey's broad experience would best serve the interests of the Debtors and their creditors in these cases.

13. Houlihan Lokey is a nationally recognized investment banking/financial advisory firm with 10 offices worldwide, and more than 275 professionals. Houlihan Lokey provides investment banking and financial advisory services and execution capabilities in a variety of areas, including financial restructuring, where Houlihan Lokey is one of the leading investment bankers and advisors to debtors, bondholder groups, secured and unsecured creditors, acquirors, and other parties-in-interest involved in financially distressed companies, both in and outside of bankruptcy. Houlihan Lokey's Financial Restructuring Group, which has over 75 professionals dedicated to such engagements, and Houlihan Lokey's Healthcare Group, which has over 15 professionals will be providing the agreed-upon financial advisory services to the Debtors. The Financial Restructuring Group and Healthcare Group the have worked together in some of the largest and most complex healthcare restructuring matters in the United States, including serving as the financial advisor to the official creditors committees or the secured bank groups in the Chapter 11 proceedings of Allegheny Health, Education and Research Foundation ("AHERF"), Sun Healthcare Group, Mariner Post-Acute Network, Genesis Health Ventures, and Fountain View, Inc.

14. As the financial advisor to the Debtors, it is expected that Houlihan Lokey will provide the following services:

     a.     Evaluating the Debtors' strategic options based upon Houlihan Lokey's initial review;

     b.     Advising the Debtors generally as to available financing and capital restructuring alternatives, including recommendations of specific courses of action;

     c.     Assisting the Debtors with the development, negotiation and implementation of a plan of reorganization (the "Plan"), including participation as an advisor to the Debtors in negotiations with creditors and other parties involved in a restructuring;

d.      Assisting the Debtors with the design of any debt and
        equity securities or other consideration to be issued in
        connection with a Plan;

e.      Assisting the Company in communications and
        negotiations with its constituents, including creditors,
        employees, vendors, shareholders and other
        parties-in-interest in connection with any Plan;

f.      Providing Bankruptcy Court testimony, if required, with
        respect to any matter as to which Houlihan Lokey is
        rendering services; and

g.      Rendering such other investment banking or financial
        advisory services as may be requested by the Debtors or
        their counsel and agreed to by Houlihan Lokey.

15.     The terms of Houlihan Lokey's engagement with the Debtors are set forth in the

Engagement Letter, effective May 7, 2002, (the "Engagement Letter"), a copy of which is

attached hereto as Exhibit A. Pursuant to the Engagement Letter, Houlihan Lokey will be

entitled to receive, as compensation for its services:

a.      a Monthly Fee of $125,000;

b.      a Transaction Fee equal to $1,500,000; and

c.      the reimbursement of all reasonable out-of-pocket
        expenses.

Finally, the Engagement Letter provides that the Debtors shall indemnify and hold Houlihan

Lokey harmless against any and all losses, claims, damages or liabilities in connection with the

engagement, except to the extent they arise as a result of any gross negligence, willful

misconduct, bad faith or self-dealing on the part of Houlihan Lokey in the performance of its

services.

16.    As described more fully in the Affidavit of Patrick Hurst in Support of the Application (the "Hurst Affidavit")[1], attached hereto as Exhibit B, the terms of Engagement Letter are similar to the terms, both financial and otherwise, agreed to by Houlihan Lokey and other investment bankers in similar engagements, both in and outside of bankruptcy.

17.    The terms of the Engagement Letter were heavily negotiated between the Debtors, their legal counsel and Houlihan Lokey, and reflect the Debtors' evaluation of the extensive work to be performed by Houlihan Lokey and the Firm's financial advisory expertise.

18.    The Engagement Letter provides that Houlihan Lokey will be retained pursuant to section 328(a) of the Bankruptcy Code. Section 328(a) provides, in relevant part, that the Debtors, "with the court's approval may, employ or authorize the employment of a professional person under section 327... on any reasonable terms and conditions of employment, including a retainer…." 11 U.S.C. §328(a). Section 328 reflects a significant departure from prior bankruptcy practice relating to the compensation of professionals, as it permits the compensation of professionals, including investment bankers and financial advisors, on more flexible terms that reflect the nature of their services and market conditions. As the Fifth Circuit Court of Appeals recognized in in re National Gypsum Co., 123 F.3d 861 (5th Cir. 1997):

> Prior to 1978, the most able professionals were often unwilling to work for bankruptcy estates where their compensation would be subject to the uncertainties of what a judge thought the work was worth after it had been done. That uncertainty continues under present §330 of the Bankruptcy Code, which provides that the court award to professional consultants reasonable compensation based on relevant factors of time and comparable costs, etc. Under present §328 the professional may avoid that uncertainty by obtaining court approval of compensation agreed to with the trustee (or debtor or committee).

Id. at 862 (citations omitted).

---

[1] A facsimile copy of the Hurst Affidavit is attached to the original of this Application. The original Hurst Affidavit will be filed separately.

19.     Owing to this inherent flexibility, courts have approved similar arrangements that contain reasonable terms and conditions under section 328.  Houlihan Lokey believes that the fee structure for this engagement is similar to fee agreements approved by bankruptcy courts throughout the United States under section 328(a).

20.     Pursuant to section 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and the Orders of this Court, Houlihan Lokey will apply to the Court for the interim and final allowance of compensation and reimbursement of expenses.  Because Houlihan Lokey will be compensated on a fixed monthly fee and certain transaction fees, Houlihan Lokey should not be required to maintain or provide detailed time records in connection with any of its fee applications.

21.     Houlihan Lokey's compliance with the requirements of sections 326 and 504 of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure 2014 and 2016 (the "Bankruptcy Rules") is set forth in greater detail in the Hurst Affidavit.

22.     As described in the Hurst Affidavit, Houlihan Lokey does not represent any of the Debtors' creditors or other parties to this proceeding, or their respective attorneys or accountants, in any matter which is adverse to the interests of any of the Debtors as debtors-in -possession, and is a "disinterested person" as defined in 11 U.S.C. § 101(14).

23.     As also described in the Hurst Affidavit, Houlihan Lokey does not hold any interest adverse to any of the Debtors as debtors-in-possession or their estates in the matters upon which Houlihan Lokey is to be engaged herein.

24.     Pursuant to the Engagement Letter, prior to the Petition Date, the Company paid Houlihan Lokey $385,000 as compensation and for the reimbursement of expenses.  These payments were for services provided prior to the commencement of these cases, and include full

mpayment for all prepetition fees and expenses. Accordingly, Houlihan Lokey is not a prepetition creditor of the Debtors.

WHEREFORE, the Debtors respectfully request that this Court enter an Order (i) authorizing and approving the Debtors' employment of Houlihan as the Debtors' financial advisors in these cases, as of the Petition Date and (ii) granting such other and further relief as the Court may deem just and proper.

Respectfully submitted,

HARWELL HOWARD HYNE
GABBERT & MANNER, P.C.


By:
Craig V. Gabbert, Jr.
Glenn B. Rose
Barbara D. Holmes
315 Deaderick Street, 18th Floor
Nashville, TN 37238
(615) 256-0500

Attorneys for Debtors



## HOULIHAN LOKEY HOWARD & ZUKIN CAPITAL

**INVESTMENT BANKERS**

www.hlhz.com

May 7, 2002

*CONFIDENTIAL*

*Via E-Mail*

Joseph F. Furlong, III
President & Chief Executive Officer
American HomePatient, Inc.
5200 Maryland Way, Suite 400
Brentwood, Tennessee 37027-5018

Re: Confidential Proposal

Dear Mr. Furlong:

This letter confirms the terms under which American HomePatient, Inc. and its subsidiaries and affiliates (collectively, "American HomePatient" or the "Company") will engage Houlihan Lokey Howard & Zukin Capital ("Houlihan Lokey" or the "Firm") effective as of May 7, 2002 as its exclusive financial advisor with respect to possible Transactions (as defined below) and with respect to such other matters as to which the Company and Houlihan Lokey may agree in writing during the term of this engagement. For purposes hereof, the term

Joseph F. Furlong, III
American HomePatient, Inc.
May 7, 2002
Page - 2 -

    (c)    Assist the Company with the development, negotiation and implementation of a Transaction or Transactions, including participation as a representative of the Company in negotiations with creditors and other parties involved in a Transaction;

    (d)    Assist the Company in valuing the Company and/or, as appropriate, valuing the Company's assets or operations; provided that any real estate or fixed asset appraisals needed would be executed by outside appraisers;

    (e)    Provide expert advice and testimony relating to financial matters related to a Transaction or Transactions, including the feasibility of any Transaction and the valuation of any securities issued in connection with a Transaction;

    (f)    Upon the request of the Company, advise the Company as to potential mergers or acquisitions, and the sale or other disposition of any of the Company's assets or businesses;

    (g)    Advise the Company and act as placement agent, as to any potential financings, either debt or equity, including debtor-in-possession financing

    (h.)    Assist the Company in preparing and presenting proposals to creditors, employees, shareholders and other parties-in-interest in connection with any Transaction;

    (i)    Assist the Company's management with presentations made to the Company's Board of Directors regarding potential Transactions and/or other issues related thereto; and

    (j)    Render such other financial advisory and investment banking services as may be mutually agreed upon by Houlihan Lokey and the Company.

As used herein, the term "Restructuring Transaction" shall mean any transaction or series of transactions that effects material amendments to, or other material changes in the Company's outstanding indebtedness under its existing credit facility as of the date hereof plus accrued and accreted interest thereon, including, without limitation, (i) one or more exchange offers whether under any applicable securities laws or regulations or otherwise or any cash tender offer or any combination thereof; (ii) (a) any merger, consolidation, reorganization, recapitalization, business combination or other transaction pursuant to which the Company is acquired by, or combined with, any person, group of persons, partnership, corporation or other entity (an "Acquiror") or (b) the acquisition, directly or indirectly by an Acquiror (or by one or more persons acting together with an Acquiror pursuant to a written agreement or otherwise), in a single transaction or a series of transactions, of (1) all or substantially all of the assets or operations of the Company or (2) all or substantially all outstanding or newly-issued shares of the Company's capital stock (or any securities convertible into, or options, warrants or other rights to acquire such capital stock)

(such capital stock and such other securities, options, warrants and other rights being collectively referred to as "Company Securities"); or (iii) any other transaction in which the requisite consents to a reorganization or restructuring are obtained either out-of-court or pursuant to a Chapter 11 plan of reorganization or restructuring plan proposed or otherwise acceptable to the Company, that is confirmed pursuant to Section 1129(b) of the United States Bankruptcy Code (collectively, a "Plan").

In performing its services pursuant to this Agreement, Houlihan Lokey is not assuming any responsibility for the Company's decision to pursue (or not to pursue) any business strategy or to effect (or not to effect) any Transaction.

2.      **Information.**  In connection with Houlihan Lokey's activities on the Company's behalf, the Company will cooperate with Houlihan Lokey and will furnish to, or cause to be furnished to Houlihan Lokey, any and all information and data in its possession or under its control concerning the Company (the "Information") which Houlihan Lokey reasonably deems appropriate, and will provide Houlihan Lokey with access to the Company's officers, directors, employees, appraisers, independent accountants, legal counsel and other consultants, advisors and third-parties.   The Company represents and warrants that all Information other than projections of future performance or facts (a) made available to Houlihan Lokey or (b) contained in any filing by the Company with any court or any governmental or regulatory agency, commission or instrumentality (an "Agency"), will, at the time it is furnished, be complete and accurate in all material respects.   The Company further represents and warrants that any projections or other forward looking information provided by it to Houlihan Lokey will have been prepared in good faith and will be based upon assumptions which the Company believes, based upon the circumstances under which they are made, are reasonable.   The Company shall promptly notify Houlihan Lokey if it learns of any material inaccuracy or misstatement in, or material omission from, any Information provided to Houlihan Lokey.   The Company acknowledges and agrees that, in rendering its services hereunder, Houlihan Lokey will be using and relying on the Information (and information available from public sources and other sources deemed reliable by Houlihan Lokey) without independent verification thereof by Houlihan Lokey or independent appraisal by Houlihan Lokey.   Houlihan Lokey does not assume responsibility for the accuracy or completeness of the Information or any other information regarding the Company.

Any financial advice, written or oral, provided by Houlihan Lokey pursuant to this Agreement is intended solely for the use and benefit of the Company, its board of directors and management, and the Company agrees that such advice may not be disclosed publicly or made available to third-parties (except as required by law) without the prior written consent of Houlihan Lokey, which consent shall not be unreasonably withheld.

3.      **Compensation.**  In consideration of our services pursuant to this Agreement, Houlihan Lokey shall be entitled to receive, and the Company shall pay in same day funds, by wire transfer in lawful money of the United States to such accounts as Houlihan Lokey shall direct,

and the Company shall provide contemporaneous written notice of each such payment to Houlihan Lokey at the above-address, Attention: Patrick M. Hurst.

(a)    *Monthly Fees*:  Commencing upon the execution of this Agreement and for the term of the Agreement, the Company shall pay Houlihan Lokey a cash fee of $125,000 per month (the "Monthly Fee").  Notwithstanding any termination of this Agreement, the Company agrees to pay Houlihan Lokey the Monthly Fee for a minimum of six (6) months.  Any Monthly Fees paid to Houlihan Lokey following the six month anniversary of this Agreement shall be credited against any Restructuring Transaction Fees or Financing Transaction Fees earned pursuant to this Agreement, provided,however, in no event shall the Restructuring Transaction Fees or the Financing Transaction Fees be reduced to less than zero. The first Monthly Fee shall be payable, in cash, upon the Company's and Houlihan Lokey's execution of this Agreement.  All additional Monthly Fees shall be due and payable in cash in advance on each monthly anniversary of the Effective Date of this Agreement.

(b)    *Restructuring Transaction Fee*:  In addition to the foregoing Monthly Fees, upon the closing or consummation of a Restructuring Transaction, the Company shall pay Houlihan Lokey a cash Restructuring Transaction Fee equal to (i) $1,500,000 in the event that the consummation of the Restructuring Transaction occurs on or prior to the fourteen (14) month anniversary of this agreement, or (ii) $1,700,000 in the event the consummation of the Restructuring Transaction occurs after the fourteen (14) month anniversary of this agreement    (the "Restructuring Transaction Fee").    For the purposes of this paragraph,  a Restructuring Transaction pursuant to a Chapter 11 plan of reorganization or restructuring plan shall be deemed consummated on the date on which the order confirming such a plan becomes final.    Houlihan Lokey shall not be entitled to receive a Restructuring Transaction Fee if (i) either a merger, consolidation or similar business combination transaction occurs pursuant to which the Company is acquired by any person, group or entity or the assets of the operations of the Company are sold and (ii) the Company is required to pay an additional fee to MTS pursuant to the terms of the agreement dated June 25, 2001 (the "MTS Fee"), as a result of a Transaction with one of the parties listed on the attached Schedule 1.  Notwithstanding the foregoing, if the MTS Fee is less than the Restructuring Transaction Fee that would be payable to Houlihan Lokey pursuant to this subparagraph, Houlihan Lokey shall be entitled to receive the difference between the MTS Fee and the Restructuring Transaction Fee.

(c)    *Financing Transaction Fee*:  For any financing of the Company or any subsidiary for which the Company requests the assistance of Houlihan Lokey, Houlihan Lokey will be paid a market rate Financing Transaction Fee to be mutually agreed upon between the Company and Houlihan Lokey.

(d)   *Fairness Opinion*:  If requested by the Board of Directors of the Company in the
event of a Restructuring Transaction or Financing Transaction, Houlihan Lokey
will render an opinion or opinions as to the fairness to the Company or its
stockholders, from a financial point of view, of the consideration to be received
pursuant to the Transaction, and will furnish to the Company a letter expressing
such opinion or opinions for inclusion in material that may be provided to the
stockholders of the Company and filed with the Securities and Exchange
Commission (at the request of the Company, such letter to be dated the date of the
filing).  Such opinion or opinions shall be in such customary form and with such
qualifications as determined reasonably appropriate by Houlihan Lokey, including
that Houlihan Lokey has relied upon the information furnished to it by the
Company or that is publicly available, has assumed the accuracy and
completeness of such information and has not assumed any responsibility for
independent verification of such information.  Houlihan Lokey shall be entitled to
a one-time fee of $200,000 in connection with the delivery of any such opinions,
payable upon the delivery of the first such opinion.

(e)   *Other Services*:  To the extent the Company requests Houlihan Lokey to perform
additional services not contemplated by this Agreement, such services and the
fees for such services shall be mutually agreed-upon by Houlihan Lokey and the
Company, in writing, in advance.

(f)   *Tail Period:*  The Transaction Fees, described in paragraphs 3(b) and (c), shall be
payable either (i) upon the consummation of a Transaction during the term of this
Agreement or (ii) the consummation of a Transaction that incorporates a structure
proposed or designed by Houlihan Lokey or involves a party with whom
Houlihan Lokey had material contact with regarding a Transaction within twelve
months of the effective date of termination of this Agreement (such twelve-month
period being referred to herein as the "Tail Period").

(g)   *Post-Termination Services*:  Furthermore, if at any time after the termination of
this Agreement, Houlihan Lokey is called upon to render services directly or
indirectly relating to the subject matter of this Agreement beyond the services
contemplated herein (including, but not limited to, producing documents,
answering interrogatories, giving depositions, giving expert or other testimony,
whether by agreement, subpoena or otherwise), the Company shall pay Houlihan
Lokey a mutually agreed-upon reasonable hourly rate for the persons involved for
the time expended in rendering such services, including, but not limited to, time
for meetings, conferences, preparation and travel, and all related costs and
expenses, inclusive of the reasonable legal fees and expenses of Houlihan Lokey's
counsel.

Joseph F. Furlong, III
American HomePatient, Inc.
May 7, 2002
Page - 6 -

(h)    *Expenses*:  In addition to the fees described above, the Company agrees to
promptly reimburse Houlihan Lokey, upon request from time to time, for all
out-of-pocket expenses reasonably incurred by Houlihan Lokey in connection
with the matters contemplated by this Agreement, including, without limitation,
reasonable fees of counsel.  Out-of-pocket expenses shall include, but not be
limited to, all reasonable travel expenses, duplicating charges, on-line service
charges, messenger services, delivery services, meeting services and long-
distance telephone and facsimile charges incurred by Houlihan Lokey.

The parties acknowledge that a substantial professional commitment of time and effort will be
required by Houlihan Lokey and its professionals hereunder, and that such commitment may
foreclose other opportunities for the Firm.  Moreover, the actual time and commitment required
for the engagement may vary substantially, creating "peak load" issues for the Firm. Given the
numerous issues which may arise in these cases, the Firm's commitment to the variable level of
time and effort necessary to address such issues, the expertise and capabilities of Houlihan
Lokey that will be required in this engagement, and the market rate for Houlihan Lokey's
services of this nature, whether in, or out of court, the parties agree that the fee arrangement
hereunder is reasonable, fairly compensates Houlihan Lokey and provides certainty to the
Company.

4.    **Indemnification; Contribution; and Standard of Care**.  The Company agrees, and
shall cause any new company that may be formed for any purpose, to agree to indemnify
Houlihan Lokey in accordance with the indemnification provisions (the "Indemnification
Provisions") attached hereto as Exhibit A, which Indemnification Provisions are incorporated
herein and are a material consideration for the agreement of Houlihan Lokey to furnish its
services under this Agreement.

5.    **Termination**.  This Agreement is terminable upon thirty (30) days written notice by the
Company or Houlihan Lokey without liability or continuing obligation; provided, however, that
(a) if the Agreement is terminated during the first six (6) months of the engagement, the
Company shall immediately pay Houlihan Lokey the unpaid portion of those Monthly Fees for
the first six (6) months of the engagement, and (b) if the Agreement is terminated thereafter, the
Company shall pay Houlihan Lokey all previously unpaid Monthly Fees and the pro-rata portion
of the Monthly Fee for the month in which the Agreement is terminated.  The expiration or
termination of this Agreement shall not affect (a) the Company's indemnification,
reimbursement, contribution and other obligations as set forth in this Agreement, and
(b) Houlihan Lokey's right to receive, and the Company's obligation to pay, (i) any and all fees
and expenses accrued as of the effective date of termination of this Agreement, and (ii) those
fees earned for a Transaction that is consummated during the Tail Period as described in this
Agreement.

6.    **Bankruptcy Court Approval**.  In the event that the Company is or becomes a debtor
under Chapter 11 of the Bankruptcy Code, the Company shall seek an order authorizing the
employment of Houlihan Lokey pursuant to the terms of this Agreement, as a professional

person pursuant to (and subject to the standard of review of) Section 328(a) of the Bankruptcy Code, the Bankruptcy Rules and applicable local rules and orders. The Company shall submit Houlihan Lokey's employment application on the first day of any Chapter 11 filing (or as soon as practicable thereafter) and use its best efforts to cause such application to be considered on the most expedited basis. The employment application and the order authorizing employment of Houlihan Lokey shall be provided to Houlihan Lokey sufficiently in advance of any Chapter 11 filing, and must be acceptable to Houlihan Lokey in its reasonable discretion. If the Order authorizing the employment of Houlihan Lokey is obtained, the Company shall pay all fees and expenses as promptly as possible in accordance with the terms of this Agreement, the Bankruptcy Code, the Bankruptcy Rules and applicable local rules and orders, and will work with Houlihan Lokey to promptly file any and all necessary applications regarding such fees and expenses with the Bankruptcy Court. If the order authorizing the employment of Houlihan Lokey is not obtained (or is later reversed or set aside for any reason), Houlihan Lokey may terminate this Agreement, and the Company shall reimburse Houlihan Lokey for all fees and expenses reasonably incurred prior to the date of termination, subject to the requirements of the Bankruptcy Code, Bankruptcy Rules and applicable local rules and orders. The terms of this paragraph are solely for the benefit of Houlihan Lokey and may be waived, in whole or in part, only by Houlihan Lokey.

7.    **CHOICE OF LAW; JURISDICTION; WAIVER OF JURY. THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK. REGARDLESS OF ANY PRESENT OR FUTURE DOMICILE OR PRINCIPAL PLACE OF BUSINESS OF THE PARTIES, EACH PARTY HEREBY IRREVOCABLY CONSENTS AND AGREES THAT ANY CLAIMS OR DISPUTES BETWEEN OR AMONG THE PARTIES HERETO PERTAINING TO THIS AGREEMENT OR TO ANY MATTER ARISING OUT OF OR RELATED TO THIS AGREEMENT SHALL BE BROUGHT IN ANY STATE OR FEDERAL COURT OF COMPETENT JURISDICTION IN THE STATE OF NEW YORK, PROVIDED THAT SUCH CONSENT AND AGREEMENT SHALL NOT BE DEEMED TO REQUIRE ANY BANKRUPTCY CASE INVOLVING THE COMPANY TO BE FILED IN SUCH COURTS. BY EXECUTION AND DELIVERY OF THIS AGREEMENT, EACH PARTY SUBMITS AND CONSENTS IN ADVANCE TO SUCH JURISDICTION IN ANY ACTION OR SUIT COMMENCED IN ANY SUCH COURT. EACH PARTY HEREBY WAIVES ANY OBJECTION WHICH IT MAY HAVE BASED UPON LACK OF PERSONAL JURISDICTION, IMPROPER VENUE OR FORUM NON CONVENIENS AND HEREBY CONSENTS TO THE GRANTING OF SUCH LEGAL OR EQUITABLE RELIEF AS IS DEEMED APPROPRIATE BY SUCH COURT. THE COMPANY CONSENTS TO SERVICE OF PROCESS IN ACCORDANCE WITH NEW YORK LAW. HOULIHAN LOKEY AND THE COMPANY (ON ITS BEHALF AND TO THE EXTENT PERMITTED BY APPLICABLE LAW, ON BEHALF OF ITS EQUITY HOLDERS) WAIVES ANY RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM (WHETHER BASED UPON CONTACT, TORT OR OTHERWISE) RELATED TO OR**

*Joseph F. Furlong, III*
*American HomePatient, Inc.*
*May 7, 2002*
*Page - 8 -*

ARISING OUT OF THE ENGAGEMENT OF HOULIHAN LOKEY PURSUANT TO, OR
THE   PERFORMANCE    BY    HOULIHAN    LOKEY    OF    THE    SERVICES
CONTEMPLATED BY, THIS AGREEMENT.

8.      **Attorneys' Fees and Court Costs**.  If any party to this Agreement brings an action
directly or indirectly based upon this Agreement or the matters contemplated hereby against the
other party, the prevailing party shall be entitled to recover, in addition to any other

*Joseph F. Furlong, III*
*American HomePatient, Inc.*
*May 7, 2002*
*Page - 9 -*

shall not be construed against any one party. This Agreement has been duly and validly authorized by all necessary corporate action on the part of the Company and has been duly executed and delivered by the Company and constitutes a legal, valid and binding agreement of the Company, enforceable in accordance with its terms.

15.   **Counterparts**. For the convenience of the parties, any number of counterparts of this Agreement may be executed by the parties hereto. Each such counterpart shall, and shall be deemed to be, an original instrument, but all such counterparts taken together shall constitute one and the same Agreement.

16.   **Credit**. Upon consummation of any Transaction, Houlihan Lokey may, at its own expense, subject to the reasonable approval of the Company, place advertisements in financial and other newspapers and periodicals (such as a customary "tombstone" advertisement), or make similar announcements describing its services in connection therewith.

If the foregoing correctly sets forth our Agreement, please sign and return to us the enclosed duplicate hereof along with a check (or wire transfer confirmation) for $125,000.

Very truly yours,

HOULIHAN, LOKEY, HOWARD & ZUKIN
CAPITAL

By: _____
Patrick M. Hurst

AHOP

☑ 011

Joseph F. Furlong, III
American HomePatient, Inc.
May 7, 2002
Page - 10 -

## EXHIBIT A

## INDEMNIFICATION AND CONTRIBUTION

This Exhibit A is a part of and incorporated into the letter agreement (together, the "Agreement"), dated May 7, 2002.

As a material part of the consideration for the agreement of Houlihan Lokey to furnish its services under the Agreement, the Company agrees to indemnify and hold harmless Houlihan Lokey and its affiliates, and their respective past, present and future directors, officers, shareholders, employees, agents and controlling persons within the meaning of either Section 15 of the Securities Act of 1933, as amended, or Section 20 of the Securities Exchange Act of 1934, as amended (collectively, the "Indemnified Parties"), to the fullest extent lawful, from and against any and all losses, claims, damages or liabilities (or actions in respect thereof), joint or several, arising out of or related to the Agreement, any actions taken or omitted to be taken by an Indemnified Party (including acts or omissions constituting ordinary negligence) in connection with the Agreement, or any Transaction or proposed Transaction contemplated thereby. In addition, the Company agrees to reimburse the Indemnified Parties for any legal or other expenses reasonably incurred by them in respect thereof at the time such expenses are incurred; provided, however, the Company shall not be liable under the foregoing indemnity and reimbursement agreement for any loss, claim, damage or liability which is finally judicially determined to have resulted primarily from the willful misconduct, gross negligence, bad faith or self-dealing of any Indemnified Party.

If for any reason the foregoing indemnification is unavailable to any Indemnified Party or insufficient to hold it harmless, the Company shall contribute to the amount paid or payable by the Indemnified Party as a result of such losses, claims, damages, liabilities or expenses in such proportion as is appropriate to reflect the relative benefits received (or anticipated to be received) by the Company, on the one hand, and Houlihan Lokey, on the other hand, in connection with the actual or potential Transaction and the services rendered by Houlihan Lokey. If, however, the allocation provided by the immediately preceding sentence is not permitted by applicable law or otherwise, then the Company shall contribute to such amount paid or payable by any Indemnified Party in such proportion as is appropriate to reflect not only such relative benefits, but also the relative fault of the Company, on the one hand, and Houlihan Lokey and any other Indemnified Parties, on the other hand, in connection therewith, as well as any other relevant equitable considerations. Notwithstanding the foregoing, the aggregate contribution of all Indemnified Parties to any such losses, claims, damages, liabilities and expenses shall not exceed the amount of fees actually received by Houlihan Lokey pursuant to the Agreement.

The Company shall not effect any settlement or release from liability in connection with any matter for which an Indemnified Party would be entitled to indemnification from the Company, unless such settlement or release contains an unconditional release of such

Indemnified Parties, satisfactory in form and substance to Houlihan Lokey, from all liability to the party being settled with in connection with such matter. The Company shall not be required to indemnify any Indemnified Party for any amount paid or payable by such party in the settlement or compromise of any claim or action without the Company's prior written consent.

Prior to entering into any agreement or arrangement with respect to, or effecting, any (i) merger, statutory exchange or other business combination or proposed sale, exchange, dividend or other distribution or liquidation of all or a significant proportion of its assets, or (ii) significant recapitalization or reclassification of its outstanding securities that does not directly or indirectly provide for the assumption of the obligations of the Company set forth in this Agreement, the Company will notify Houlihan Lokey in writing thereof (if not previously so notified) and, if requested by Houlihan Lokey, shall arrange in connection therewith alternative means of providing for the obligations of the Company set forth herein, including the assumption of such obligations by another party, insurance, surety bonds or the creation of an escrow, in each case in an amount and upon terms and conditions reasonably satisfactory to Houlihan Lokey.

The Company further agrees that neither Houlihan Lokey nor any other Indemnified Party shall have any liability, regardless of the legal theory advanced, to the Company or any other person or entity (including the Company's equity holders and creditors) related to or arising out of Houlihan Lokey's engagement, except for any liability for losses, claims, damages, liabilities or expenses incurred by the Company which either (a) are finally judicially determined to have resulted primarily from, or (b) is agreed by such Indemnified Party to have resulted primarily from, the willful misconduct, gross negligence, bad faith or self-dealing of any Indemnified Party.

The indemnity, reimbursement, contribution and other obligations and agreements of the Company set forth herein shall apply to any modifications of the Agreement, shall be in addition to any liability which the Company may otherwise have, and shall be binding upon and inure to the benefit of any successors, assigns, heirs and personal representatives of the Company and each Indemnified Party. The foregoing provisions shall survive the consummation of any Transaction and any termination of the relationship established by the Agreement.

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

|  |  |  |
|---|---|---|
| IN RE: | ) | |
| | ) | Case No. _____ |
| AMERICAN HOMEPATIENT, INC., et al. | ) | **Jointly Administered** |
| | ) | **Chapter 11** |
| Debtors. | ) | |

## AFFIDAVIT AND DISCLOSURE STATEMENT OF FINANCIAL ADVISOR HOULIHAN LOKEY HOWARD & ZUKIN CAPITAL PURSUANT TO BANKRUPTCY CODE SECTIONS 327 and 328 (a) AND FEDERAL RULES OF BANKRUPTCY PROCEDURE 2014(a) and 2016(b)

|  |  |
|---|---|
| _____ | ) |
| | ) |
| COUNTY OF _____ | ) |

Patrick M. Hurst, being duly sworn, deposes and says:

1.      I am a Managing Director of Houlihan Lokey Howard & Zukin Capital. ("Houlihan"), and am duly authorized to make this Affidavit on behalf of Houlihan. I make this Affidavit in support of the Debtors' Application to Employ Houlihan Lokey Howard & Zukin Capital as Financial Advisors (the "Application"). The facts set forth in this Affidavit are personally known to me, and if called as a witness, I could and would testify thereto. Unless otherwise defined, all capitalized terms used herein have the meanings given to them in the Application.

2.      Houlihan is a nationally recognized investment banking/financial advisory firm with 10 offices worldwide, and more than 275 professionals. Houlihan provides investment banking and financial advisory services and execution capabilities in a variety of areas, including financial restructuring, where Houlihan is one of the leading investment bankers and advisors to debtors, bondholder groups, secured and unsecured creditors, acquirors, and other parties-in-interest involved in financially distressed companies, both in and outside of bankruptcy. Houlihan's Financial Restructuring Group, which has over 75 professionals

297830-2

## EXHIBIT B

dedicated to such engagements, and Houlihan's Healthcare Group, which has over 15 professionals will be providing the agreed-upon financial advisory services to the Debtors. The Financial Restructuring Group and Healthcare Group the have worked together in some of the largest and most complex healthcare restructuring matters in the United States, including serving as the financial advisor to the official creditors committees or the secured bank groups in the Chapter 11 proceedings of Allegheny Health, Education and Research Foundation ("AHERF"), Sun Healthcare Group, Mariner Post-Acute Network, Genesis Health Ventures, and Fountain View, Inc.

3.     Houlihan has agreed to provide financial advisory services to the Debtors in the above-captioned Chapter 11 cases before this Court, pursuant to the terms and conditions of the Engagement Letter dated May 7, 2002, between the American HomePatient, Inc. (the "Company") and Houlihan (the "Engagement Letter"). A copy of the Engagement Letter is attached hereto as Exhibit A. No agreement exists to share any compensation received by Houlihan for its services with any person or firm.

4.     The terms and conditions of the Engagement Letter were heavily negotiated between the Company and Houlihan, and reflected the parties' mutual agreement as to the substantial efforts that will be required in this engagement. As is customary in similar engagements, both in and outside of bankruptcy, the Engagement Letter provides for Houlihan to receive a Monthly Fee and a Transaction Fee (as defined in the Engagement Letter). Taking into account the complex nature of this engagement, the terms contained in the Engagement Letter are similar to the terms agreed to by Houlihan and other financial advisory firms in similar restructuring engagements, both in and outside of bankruptcy.

5.     Houlihan is a "disinterested person" as that term is defined in Section 101(14) of the Bankruptcy Code except to the extent that certain employees own a combined 53,000 shares,

or 0.3% of the total shares outstanding, of the Company's equity. Houlihan has frozen these positions in accordance with its established procedures. In all other respects, Houlihan:

a.  is not a creditor or insider of the Debtors;
b.  is not and was not an investment banker for any outstanding security of the Debtors;
c.  has not been, within three (3) years before the date of the filing of the Debtors' Chapter 11 petition, (i) an investment banker for a security of the Debtors, or (ii) an attorney for such an investment banker in connection with the offer, sale, or issuance of a security of the Debtors; and
d.  is not and, was not, within two (2) years before the date of the filing of the Debtors' Chapter 11 petition, a director, officer, or employee of the Debtors or of any investment banker as specified in subparagraph (b) or (c) of this paragraph.

6.  Moreover, to the best of my knowledge, information and belief formed after reasonable inquiry, Houlihan and its affiliates, professionals and employees have no materially adverse interest to the Debtors' estate or the creditors in these cases, and has no relationship to the Debtors' respective attorneys, accountants and other professionals, the United State Trustee or the United States Bankruptcy Court.

7.  To determine its relationship with the parties-in-interest in these cases, Houlihan researched its client databases as to the following individuals and entities (collectively, the "Interested Parties"), that were identified to Houlihan by Harwell Howard Hyne Gabbert & Manner, P.C., counsel to the Company:

a.  the Debtors and their non-debtor affiliates;

b.  the directors and officers of the Debtors;

c.  the 20 largest unsecured creditors of each of the Debtors;

d.  the attorneys and other professionals of the Debtors;

e.  the prepetition lenders and landlords of the Debtors;

f.    5% shareholders of the Debtors; and

g.    other potentially adverse parties.

This research confirmed that Houlihan has no materially adverse interest to the Debtors' estate or

the creditors in these cases. Houlihan's research of its relationships with the Interested Parties

indicated that during the past three years Houlihan has provided or is providing services, or has a

financial relationship to certain entities in matters <u>unrelated</u> to these Chapter 11 cases, and

Houlihan has so indicated these on the attached Schedule 1.

8.    In addition, and by way of supplemental disclosure:

a.    Houlihan provides services in connection with numerous cases, proceedings and transactions unrelated to these Chapter 11 cases, including representing debtors and creditors' committees in Chapter 11 proceedings and in out-of-court restructurings. These unrelated matters involve numerous attorneys, professionals and creditors, some of whom are, or may be, attorneys, professionals and creditors of the Debtors in these Chapter 11 cases;

b.    Houlihan has thousands of clients, past and present, who are located throughout the United States, Asia, Europe and South America, in a variety of industries. While Houlihan has not advised any of these parties in connection with these Chapter 11 cases, it is possible that certain of these parties, their creditors and the related professionals may have some relationship to the Debtors or their creditors in these cases;

c.    Houlihan and its affiliates have over 275 employees, some of whom may have personal investments in the Debtors and the creditors in these cases. Houlihan has placed the Debtors on their "restricted list", which precludes any employee from trading in the securities of the Debtors; and

d.      Houlihan is affiliated with two investment funds, Sunrise
        Capital Partners, LP and Century Park Capital Partners, LP.
        While neither of these funds have any investments in the
        Debtors, it is possible that they may have made, or currently
        hold investments in certain of the creditors in these Chapter 11
        cases.  To the extent that either of these funds undertakes any
        investments relating to the Debtors' cases, Houlihan will obtain
        approval of the United States Trustee and the Court prior to
        such investment.

9.      To the extent I discover any facts bearing on the matters described herein during
the period of Houlihan's retention, I will supplement the information contained in this Affidavit.

10.     Pursuant to the Engagement Letter, the Debtors paid Houlihan an aggregate
amount of approximately $385,000 for services provided prior to the commencement of these
cases, which included full payment for all prepetition fees and expenses.  Accordingly, Houlihan
is not a prepetition creditor of the Debtors.

Houlihan will apply to the Court for payment of compensation and reimbursement of
expenses in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy
Rules, the Local Rules of this Court and the Engagement Letter, and pursuant to any additional
procedures that may be established by the Court in these cases.  Because Houlihan will be
compensated on a fixed monthly basis with a potential Transaction Fee, and as Houlihan does
not have the requisite systems in place to record its time, Houlihan should not be required to
maintain or provide detailed time records in connection with any of its fee applications.

Sworn to and subscribed before me
this 31⁵ day of July 2002.

Notary Public
My Commission Expires: _11/10/02_

"OFFICIAL SEAL"
DEANNA M. PAPESH
COMMISSION EXPIRES 11/10/02

297830-1