**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

FILED

2002 AUG 20  PM 1:42

U.S. BANKRUPTCY

|  |  |  |
|---|---|---|
| **In re:** | : | |
| | : | |
| **AMERICAN HOMEPATIENT, INC.,** | : | **Case No. 302-08915** |
| **A DELAWARE CORPORATION, et al.,** | : | **Chapter 11** |
| | : | **Judge Paine** |
| **Debtors.** | : | **Jointly Administered** |
| | : | |

---

### APPLICATION TO EMPLOY MCDONALD INVESTMENTS, INC., AS FINANCIAL ADVISORS TO THE OFFICIAL UNSECURED CREDITORS COMMITTEE EFFECTIVE AS OF AUGUST 16, 2002

---

The Official Unsecured Creditors Committee (the "Committee" or "Applicant"), by and through its undersigned counsel, hereby applies to the Court to approve the employment and retention of McDonald Investments, Inc., ("McDonald") as financial advisors to the Committee in these Chapter 11 Cases, pursuant to Sections 327 and 328(a) of the Bankruptcy Code, 11 U.S.C. §§ 101-1330 (the "Bankruptcy Code") and Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). In support of this Application, the Committee (i) submits the Engagement Letter of McDonald dated August 16, 2002 (the "Engagement Letter"), attached hereto as Exhibit A; (ii) submits the Affidavit of David M. Powlen, a member of McDonald (the "Powlen Affidavit"),[1] attached hereto as Exhibit B and incorporated herein by reference; and (iii) respectfully represents as follows:

---

[1] A facsimile copy of the Powlen Affidavit is attached to this Application. The original Powlen Affidavit will be filed separately.

857514.2

# I.    JURISDICTION

1.    This Court has jurisdiction over the subject matter of this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this Court pursuant to 28 U.S.C. §1409(a). This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A) and (O). The Court possesses the requisite authority to grant the relief requested herein pursuant to Sections 105 and 1107 of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure.

# II.    BACKGROUND

2.    An order for relief has been entered in favor of American HomePatient, Inc., a Delaware Corporation and twenty-four (24) related entities (collectively the "Debtors") under Chapter 11 of Title 11 of the United States Code ("Bankruptcy Code") in the United States Bankruptcy Court for the Middle District of Tennessee. The Debtors continue in the management of their business and possession of their property as debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

3.    An Order Authorizing Joint Administration of Chapter 11 Cases Pursuant to Federal Rule of Bankruptcy Procedure 1015(b), was entered on July 31, 2002.

4.    The Debtors are engaged in the business of providing home health care services and products, consisting primarily of respiratory and infusion therapies and the rental and sale of home medical equipment and home health care supplies.

5.    No trustee or examiner has been appointed in these cases.

6.    On August 6, 2002, the United States Trustee for the District of Tennessee appointed a five (5) member official unsecured creditors committee ("Committee") pursuant to Section 1102(a)(1) of the Bankruptcy Code. The first organizational meeting of the Committee

was held on August 6, 2002. At the August 6 meeting, the Committee selected Ralph Devine of Ross Products Division of Abbott Laboratories and Corbet Lancaster of ResMed Corp., as Co-Chairmen. The Committee has since selected Mike Grospitch of Invacare Corp., and Invacare Supply Group as its sole Chairperson. On August 8, 2002, the Committee also selected undersigned counsel as its attorneys.

7.     On August 15, 2002, the Court entered an Order Authorizing The Employment And Retention Of Waller Lansden Dortch & Davis, PLLC, As Counsel For The Unsecured Creditors Committee Effective As Of August 8, 2002.

## III.     APPLICATION TO RETAIN MCDONALD

8.     The Committee files this Application because of their pressing need to retain a financial advisor to assist them in the critical tasks associated with analyzing and implementing critical restructuring alternatives, and to help guide them through Debtors' reorganization efforts. As a result of their careful deliberations, and through the exercise of their business judgment, the Committee determined that McDonald's broad experience would best serve the interests of the Committee in these cases.

9.     McDonald is a leading investment banking firm headquartered in Cleveland, Ohio, with offices in Nashville, Atlanta, Boston, Chicago, Denver, Los Angeles, New York and other financial centers. McDonald employs over 100 investment bankers who are organized into various industry and service groups. McDonald has a 12-year track record of successful out-of-court restructurings and chapter 11 reorganizations. McDonald has professionals who are dedicated full-time to McDonald's Restructuring Group, which is co-headed by an attorney and CFA with 36 years of combined business bankruptcy case and investment banking experience. McDonald also has expertise in the healthcare industry pertaining to healthcare debt financing,

private equity, mergers and acquisitions, real estate/ off balance sheet financing, public equity and shareholder issues.

10.     As the financial advisor to the Debtors, it is expected that McDonald will provide the following services:

     a.     Assisting the Committee with analyzing the Debtors' operations, cash flow projections, business strategy, competition in relevant markets, and strategic alternatives;

     b.     Assisting the Committee with analyzing the financial ramifications of significant transactions for which the Debtors or other parties seek Bankruptcy Court approval, including, but not limited to, cash use or post-petition financing, assumption or rejection of major executory contracts, and employee compensation or retention programs;

     c.     Advising the Committee on the value of the businesses of the Debtors and/or components thereof on a going concern basis, and any consideration or distributions that would be accorded to unsecured creditors pursuant to a plan of reorganization filed or proposed to be filed with the Bankruptcy Court;

     d.     Advising and assisting the Committee in analyzing and evaluating any plans of reorganization that may be filed or proposed to be filed with the Bankruptcy Court by the Debtors or other parties, and in possibly formulating and developing an alternative plan of reorganization on behalf of the Committee;

     e.     Advising and assisting the Committee in evaluating various possible structures, forms, and consideration included in any sale or restructuring transactions;

     f.     Attending and providing advice at meetings of the Committee;

     g.     Assisting the Committee in communications and negotiations with representatives of the Debtors and other parties in connection with proposed significant transactions or plans of reorganization;

     h.     Participating in hearings before the Bankruptcy Court, if required, with respect to any matter as to which McDonald has provided advice to the Committee; and

     i.     Rendering such other investment banking or financial advisory services as may be reasonably requested by the Committee or its counsel and agreed by McDonald.

11.     The terms of McDonald's engagement with the Debtors are set forth in the Engagement Letter attached hereto as Exhibit A. Pursuant to the Engagement Letter, McDonald will be entitled to receive the following, as compensation for its services:

in any matter which is adverse to the interests of any of the Debtors as debtors-in-possession, and is a "disinterested person" as defined in 11 U.S.C. § 101(14).

19.    As also described in the Powlen Affidavit, McDonald does not hold any interest adverse to any of the Debtors as debtors-in-possession or their estates in the matters upon which McDonald is to be engaged herein.

20.    The Committee needs an order appointing McDonald as financial advisor entered immediately, subject to objections to run from the date of appointment, because of the current matters pending in the case.

21.    Applicant has an interest in various motions and orders, some of which are set for hearing on August 30, 2002, and needs its financial advisor to assist the Committee in evaluating its interests and positions in such matters. Applicant asserts that it is therefore important to it to finalize as soon as possible the terms on which McDonald will be retained. Unless McDonald is appointed immediately, Applicant will be prejudiced. Thus, the Committee needs to use the Court's walk-through procedures for this Application and the accompanying proposed Order And Notice.

22.    Counsel for the Committee will give notice of this Application and the accompanying proposed Order And Notice, once approved, to the Debtors, Debtors' counsel, the United States Trustee, the Debtors' twenty-largest unsecured creditors, and all other parties that have specifically requested notice in these cases.

WHEREFORE, the Committee respectfully requests that this Court enter immediately an Order (i) authorizing and approving the Committee's employment of McDonald as the

Committee's financial advisors in these cases, <u>nunc</u> <u>pro</u> <u>tunc</u> to August 16, 2002, and (ii)

granting such other and further relief as the Court may deem just and proper.

Respectfully submitted:

WALLER LANSDEN DORTCH & DAVIS
A Professional Limited Liability Company

By: _____

David E. Lemke
Michael R. Paslay
Nashville City Center
511 Union Street, Suite 2100
P.O. Box 198966
Nashville, TN 37219-8966
(615) 244-6380

ATTORNEYS FOR THE OFFICIAL UNSECURED
CREDITORS COMMITTEE

McDonald
Investments

August 16, 2002

McDonald Investments Inc.,
A KeyCorp Company
800 Superior Avenue
Cleveland, Ohio 44114-2603

Tel: 216 443-2300

Official Committee of Unsecured Creditors
for American HomePatient Inc. and affiliates Chapter 11 Cases
c/o Waller Lansden Dortch & Davis
(Attn: Michael R. Paslay and David E. Lemke)
Suite 2100
Nashville City Center
511 Union Street
Nashville, Tennessee 37219

Re:   *In re* American HomePatient, Inc., et al., Chapter 11 Case No. 02-08915-GP3-11 (Jointly
       Administered), U.S. Bankruptcy Court for the Middle District of Tennessee, Nashville
       Division ("Bankruptcy Court")

Dear Committee Members:

         We are pleased to confirm the arrangements under which McDonald Investments Inc.
("McDonald") has been engaged, effective as of August 16, 2002, as the financial advisor to the
Official Committee of Unsecured Creditors (the "Committee") in the above-referenced jointly
administered cases of the debtor American HomePatient, Inc. and its affiliated debtors
(collectively, the "Company").

         As financial advisor to the Committee, it is anticipated that McDonald will provide the
following services:

                  Assisting the Committee with analyzing the Debtors' operations, cash flow
                  projections, business strategy, competition in relevant markets, and strategic
                  alternatives;

                  Assisting the Committee with analyzing the financial ramifications of significant
                  transactions for which the Debtors or other parties seek Bankruptcy Court approval,
                  including, but not limited to, cash use or post-petition financing, assumption or
                  rejection of major executory contracts, and employee compensation or retention
                  programs;

Advising the Committee on the value of the businesses of the Debtors and/or components thereof on a going concern basis, and any consideration or distributions that would be accorded to unsecured creditors pursuant to a plan of reorganization filed or proposed to be filed with the Bankruptcy Court;

Advising and assisting the Committee in analyzing and evaluating any plans of reorganization that may be filed or proposed to be filed with the Bankruptcy Court by the Debtors or other parties, and in possibly formulating and developing an alternative plan of reorganization on behalf of the Committee;

Advising and assisting the Committee in evaluating various possible structures, forms, and consideration included in any sale or restructuring transactions;

Attending and providing advice at meetings of the Committee;

Assisting the Committee in communications and negotiations with representatives of the Debtors and other parties in connection with proposed significant transactions or plans of reorganization;

Participating in hearings before the Bankruptcy Court, if required, with respect to any matter as to which McDonald has provided advice to the Committee; and

Rendering such other investment banking or financial advisory services as may be reasonably requested by the Committee or its counsel and agreed by McDonald.

As compensation for its services as the Committee's financial advisor, McDonald shall be paid a fee in the amount of $75,000 per month, commencing as of August 16, 2002. McDonald shall also be reimbursed for all reasonable out-of-pocket expenses incurred in connection with the performance of its duties under this agreement, including, without limitation, all reasonable travel expenses, duplicating charges, on-line service charges, messenger services, delivery services, meeting services and telephone and facsimile charges.

It is possible that in the course of the Debtors' cases there could be contested proceedings related to the value of the Debtors' businesses. If the Committee were to request and McDonald were to agree to conduct a formal valuation analysis or a formal review of a valuation analysis by the Company's or another party's professionals in preparation for possible or actual contested proceedings and testimony by McDonald's professionals before the Bankruptcy Court, a separate fee of $150,000 will be payable to McDonald for such an analysis or review.

Official Committee of Unsecured Creditors
Page 3

In addition, McDonald shall be entitled to a fee in the amount of $250,000 ("Conclusion Fee") upon the effective date of a plan that is confirmed in the Company's cases, the accomplishment of sale(s) or other disposition(s) of all or substantially all of the Company's assets or operations, or the completion of any other transaction that would entitle the Company's financial advisor Houlihan Lokey Howard & Zukin Capital ("HLHZ") to a Restructuring Transaction Fee as defined in and pursuant to the engagement agreement between the Company and HLHZ dated May 7, 2002 (which is the subject of an Application filed on July 31, 2002, with the Bankruptcy Court).

The Committee agrees, subject to Bankruptcy Court approval, to the provisions with respect to McDonald's indemnity and other matters set forth in Appendix A. Appendix A is incorporated by reference into this letter.

This agreement may be terminated with or without cause by McDonald or the Committee at any time, upon the delivery of written notice to the other party. After termination of this agreement, neither party will have any liability or continuing obligation to the other, except that: (i) the provisions of Appendix A to this agreement will survive any such termination; (ii) McDonald shall be entitled to the payment of reasonable out-of-pocket expenses incurred and any fees earned up to the time of termination, and (iii) McDonald shall remain entitled to a Conclusion Fee for a period of 12 months after such termination.

The Committee will provide McDonald with such information that is within the Committee's possession, custody or control as McDonald reasonably deems appropriate in connection with its engagement and will use appropriate efforts to provide McDonald with reasonable access to the Company's officers, directors and advisors. The Committee acknowledges that McDonald: (i) will be using and relying upon the accuracy and completeness of the publicly available information or other information supplied by or on behalf of the Company or Committee in connection with this engagement without independent verification, (ii) does not assume responsibility for the accuracy of any such information, and (iii) can not guarantee or provide any other assurances with respect to any reorganization of the Company, any recoveries for the Company's unsecured creditors, or any other specific transactions in the subject cases.

The Committee agrees to promptly apply to the Bankruptcy Court for the approval pursuant to sections 328 and 1103 of the Bankruptcy Code of this agreement and McDonald's retention hereunder and subject to the standard of review provided in section 328(a) of the Bankruptcy Code and not subject to any other standard of review under section 330 of the Bankruptcy Code. The Committee will provide McDonald with a draft of such application and any proposed order authorizing McDonald's retention sufficiently in advance of the filing of such application and proposed order to enable McDonald to review and comment thereon. McDonald will have no obligation to provide any services under this agreement unless its retention under the

3

Official Committee of Unsecured Creditors
Page 5

the State of Ohio, without regard to principles of conflicts of laws.   McDonald understands that it
will be receiving information about the Company that is confidential and subject to the
confidentiality provisions of the Committee by-laws.   McDonald agrees to abide by the
confidentiality provisions in the Committee by-laws.

        If this letter accurately sets forth the understanding between us, please sign the enclosed
copy of this letter below and return it to McDonald, at which time this letter will become a
mutually binding obligation.

                                            Very truly yours,

                                            McDONALD INVESTMENTS INC.


                            By:     _____

                                    David M. Powlen, Managing Director and
                                    Co-Manager, Restructuring Group


Agreed to as of the above date:


OFFICIAL COMMITTEE OF UNSECURED CREDITORS
OF AMERICAN HOMEPATIENT INC., et al.

By: _____

Its: _Investee / Chairman of Committee_


                                            5

# APPENDIX A

In the event that McDonald Investments Inc. ("McDonald") becomes involved in any capacity, other than as a plaintiff, in any action, proceeding or investigation brought by or against any person, including stockholders of American HomePatient Inc. or any of its debtor affiliates in the above-referenced bankruptcy cases (collectively, the "Company"), in connection with any matter related to the engagement described in the foregoing letter, the Company periodically will reimburse McDonald for its legal and other expenses (including the cost of any investigation and preparation) reasonably incurred in connection therewith; provided, however, that if it is found in any such action, proceeding or investigation that any loss, claim, damage or liability of McDonald has resulted from the gross negligence or bad faith of McDonald in performing the services which are the subject of this letter, McDonald shall repay such portion of the reimbursed amounts that is attributable to expenses incurred in relation to the act or omission of McDonald which is the subject of such finding. The Company also will indemnify and hold McDonald harmless against any losses, claims, damages or liabilities to any such person in connection with any matter related to the assignment described in this letter, except to the extent that any such loss, claim, damage or liability results from the gross negligence or bad faith of McDonald in performing the services that are the subject of this letter. If for any reason the foregoing indemnification is unavailable to McDonald or insufficient to hold it harmless, then the Company shall contribute to the amount paid or payable by McDonald as a result of such loss, claim, damage or liability in such proportion as is appropriate to reflect the relative economic interests of the Company, its creditors and its stockholders on the one hand and McDonald on the other hand in the matters contemplated by this letter as well as the relative fault of the Company, McDonald, and other parties with respect to such loss, claim, damage or liability and any other relevant equitable considerations; provided, however, that in no event shall McDonald be required to contribute any amounts in excess of the amount of fees received by it hereunder. The Company shall be liable for any settlement of any claim against McDonald made with the Company's written consent, which consent shall not unreasonably be withheld, and the Company shall not, without the prior written consent of McDonald, settle or compromise any claim or permit a default or consent to the entry of any judgment in respect thereof, unless such settlement, compromise or consent includes, as an unconditional term thereof, the giving by the claimant to McDonald of an unconditional release from any and all liability in respect of such claim. McDonald shall have the right to retain counsel of its own choice to represent it in connection with any matter as to which the reimbursement, indemnity and contribution provisions of this paragraph apply. The reimbursement, indemnity and contribution obligations of the Company under this paragraph shall be in addition to any liability which the Company may otherwise have, shall extend upon the same terms and conditions to any affiliate of McDonald and the directors, agents, employees and controlling persons (if any), as the case may be, of McDonald and any such affiliate, and shall be binding upon and inure to the benefit of any successors, assigns, heirs and personal representatives of the Company, McDonald, any such affiliate and any such person. The indemnity obligations of the Company hereunder shall not extend to any affiliate of McDonald or to the directors, agents, employees, or controlling persons (if any), as the case may be, of McDonald or any such affiliate to the extent that any loss, claim, damage or liability results from the gross negligence or bad faith of McDonald or any such other person in performing the services which are the subject of the letter. The Company also agrees that neither McDonald nor any of such affiliates, directors, agents, employees or controlling

persons shall have any liability to the Company and its stockholders for or in connection with any matter referred to in this letter except to the extent that any losses, claims, damages, liabilities or expenses incurred by the Company result from the gross negligence or bad faith of McDonald in performing the services that are the subject of this letter. The provisions of this Appendix A shall survive any termination or completion of the engagement provided by this letter agreement and this letter agreement shall be governed by and construed in accordance with the laws of the State of Ohio without regard to principles of conflicts of laws.

# EXHIBIT B

## TO

## APPLICATION TO EMPLOY MCDONALD INVESTMENTS, INC., AS FINANCIAL ADVISORS TO THE OFFICIAL UNSECURED CREDITORS COMMITTEE EFFECTIVE AS OF AUGUST 16, 2002

## UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | |
|---|---|
| In Re:                    ) | Jointly Administered under |
|                        ) | Case No. 02-08915-GP3-11 |
| AMERICAN HOMEPATIENT, INC., et al.,   ) | Chapter 11 |
|                        ) | |
|              Debtors.       ) | Judge George C. Paine |

## AFFIDAVIT AND DISCLOSURE STATEMENT OF McDONALD INVESTMENTS INC. IN SUPPORT OF APPLICATION FOR ORDER RETAINING IT AS FINANCIAL ADVISOR TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF AMERICAN HOMEPATIENT, INC. ET. AL.

State of Ohio        )
                 ) SS:
County of Cuyahoga   )

David M. Powlen, under the penalty of perjury, deposes and says:

     1.      I am a Managing Director and Co-Manager of the Restructuring Group of McDonald Investments Inc. ("McDonald"). McDonald maintains its headquarters at 800 Superior Avenue, Cleveland, Ohio 44114. McDonald is a subsidiary of KeyCorp, a registered

bank holding company, which is also the parent company of KeyBank National Association ("KeyBank"). KeyCorp and KeyBank maintain their headquarters at 127 Public Square, Cleveland, Ohio 44114. KeyCorp is one of the nation's largest bank-based financial services companies and was recently ranked 257th on the Fortune 500 List of Companies. KeyBank, with assets of approximately $72 billion, was recently ranked as the 12th largest bank in the United States.

2.     I submit this Affidavit (i) in support of the Application of the duly-appointed Official Committee of Unsecured Creditors (the "Committee") in the Chapter 11 cases of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") seeking an order authorizing McDonald's retention as the Committee's financial advisor in compliance with Sections 328 and 1103 of Title 11 of the United States Code (the "Bankruptcy Code"), and (ii) to provide the disclosure required under Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

3.     I have been authorized to make the representations contained herein on behalf of McDonald. Unless otherwise stated in this Affidavit, all of the information set forth herein is to the best of my knowledge, information, and belief. If any information in this Affidavit requires amendment or modification upon completion of further analysis or as additional information

2

becomes available to McDonald, one or more supplemental affidavits will be submitted to the Court reflecting the same.

    4.    McDonald has agreed, subject to the Court's authorization, to be retained and employed to provide financial advisory services to the Committee. McDonald's anticipated services in these cases are detailed in its engagement letter with the Committee dated August 16, 2002 (the "Engagement Letter"). The terms and conditions of compensation of McDonald for its services as the Committee's financial advisor are also set forth in the Engagement Letter.

    5.    In connection with McDonald's proposed retention by the Committee, the names of the Debtors, their non-debtor affiliates, the Debtors' secured creditors, twenty (20) largest unsecured creditors, significant shareholders and other entities identified to McDonald by the Committee's counsel were searched in certain computerized databases maintained by McDonald and KeyBank, and certain e-mail inquiries were circulated to all of McDonald's investment banking professionals, to ascertain whether McDonald or KeyBank has connections to any of such entities and, if so, whether such connections pertain to the proposed financial advisory services to be performed by McDonald for the Committee.

6.    Based upon the above-described reviews and inquires, it appears that neither McDonald nor KeyBank is:

> (a)  a creditor, an equity security holder, or an insider of any of the Debtors;

> (b)  an investment banker for any outstanding security of any of the Debtors;

> (c)  within three years before the commencement of the Debtors' cases, an investment banker for a security of any of the Debtors, or an attorney for such an investment banker in connection with the offer, sale, or issuance of a security of any of the Debtors; or

> (d)  within two years before the commencement of the Debtors' cases, a director, officer, or employee of any of the Debtors or of an investment banker specified in subparagraph (b) or (c) of this paragraph.

7.    Also, based upon the above-described reviews and inquiries, it appears that neither McDonald nor KeyBank has any other relationship with the Debtors, or any connections with their secured creditors, major unsecured creditors, significant shareholders or other parties in interest, or any of their respective attorneys, accountants or other professionals, that may pertain to McDonald's proposed engagement for the Committee, except as set forth below:

> (a)  Invacare Corp., which is one of the Debtors' 20 largest unsecured creditors (and a member of the Committee), has been (but is not at present) an investment banking client of McDonald, and currently has a commercial borrowing relationship with Key.

> (b)  Amerisource Corporation, which is one of the Debtors' 20 largest unsecured creditors (not a member of the Committee), has been (but is not at present) an investment banking client of McDonald.

> (c)  Mallinckrodt, Inc., which is one of the Debtors' 20 largest unsecured creditors (and a member of the Committee), was a purchaser in an investment banking transaction for which McDonald represented the seller.  McDonald has no current investment banking relationship with Mallinckrodt, Inc.

(d) KeyBank and/or McDonald have had and/or have lending, loan participation and other business relationships with various secured creditors of the Debtors, including (but not necessarily limited to) Bank of America, Bear Stearns & Co., Inc., Barclays Bank, Deutsche Bank, Fernwood Associates, General Electric Capital Corporation, Morgan Stanley, and Van Kampen. To the best of the knowledge, information and belief of myself and other KeyBank or McDonald employees, none of those relationships are connected with the Debtors or these cases.

(e) KeyBank and/or McDonald may have been and/or may be a client of, or may have been and/or may be involved in matters or transactions with entities that are also clients of, various professional firms that are representing the Debtors, creditors or other parties in interest in these cases. Without limiting the generality of the foregoing statement, KeyBank is a client of the law firm of O'Melveny & Myers LLP (which is acting as counsel for one or more of the secured creditors in the Debtors' cases), McDonald has been a client of Harwell Howard Hyne Gabbert & Manner PC (which is acting as counsel for the Debtors), and KeyBank and McDonald are clients of Dix & Eaton Inc. (which is acting as public relations consultant for the Debtors). To the best of the knowledge, information and belief of myself and other KeyBank or McDonald employees, none of those relationships that KeyBank or McDonald has or may have with any such professionals are connected with the Debtors or these cases.

(f)  Due to the size and complexity of the Debtors, their affiliates, and their business operations, the size and complexity of KeyCorp, its affiliates, and their business operations, and limitations in the types of inquiries and searches that are capable of being conducted within KeyBank's and McDonald's respective organizations, there may be other direct or indirect connections or relationships between KeyBank or McDonald and the Debtors, their creditors, other parties-in-interest in these cases or their respective attorneys, accountants, or other professionals which have not yet been identified by any of KeyBank's or McDonald's representatives and which are therefore not disclosed herein. However, as also stated in paragraph 3 above, if such additional connections or relationships become known to me directly or through other McDonald or KeyBank employees, one or more supplemental affidavits will be submitted to the Court reflecting such connections or relationships.

8.     As part of their diverse and extensive activities, McDonald and KeyBank are involved in numerous cases, proceedings and transactions involving many different attorneys, accountants, consultants, and other professionals, some of whom may represent claimants or

other parties in interest in the Debtors' chapter 11 cases. Also, McDonald and KeyBank may in the past have been, and may in the future be, represented or served by such professionals who are involved in these cases. In addition, McDonald or KeyBank may in the past have worked, and may at present or in the future work with or against other professionals and creditor committee members involved in these cases in matters wholly unrelated to these cases. Based on McDonald's current knowledge of the professionals involved, and to the best of my knowledge, none of such present business relationships constitutes an interest adverse to the Debtors in matters upon which McDonald is to be employed, and none has any connection with these cases.

9.      In conclusion, to the best of my knowledge, information and belief, McDonald does not hold or represent an interest that is materially adverse to the Debtors' estates, or any class of creditors or equity security holders, in the matters for which McDonald is proposed to be retained on behalf of the Committee, and McDonald is therefore a "disinterested person" as defined in Section 101(14) of the Bankruptcy Code.

10.      McDonald has extensive investment banking and financial advisory experience, including working in the health care industry and with troubled companies. McDonald's Chapter 11 and restructuring engagements have included: Bethlehem Steel Corporation (investment banker and restructuring advisor to the Official Committee of Unsecured Creditors)(pending); Republic Technologies International (financial advisor to the Chapter 11 debtors)(pending);

6

Homeland Stores Inc. (financial advisor to Chapter 11 debtors)(pending); Weirton Steel Corporation (financial advisor to a special committee of the board of directors); Vista Eyecare, Inc. (financial advisor to the debtors); Gorges Quick to Fix Foods, Inc. (financial advisor to the debtors); Eagle Picher Industries (financial advisor in appraisal and sale of the debtors); Elder Beerman Stores Corporation (financial advisor to equity holders); The Gibson-Homans Company (investment banker in a sale of the debtor); and Grabill Corporation (financial advisor to the trustee in appraisal and sale of 14 subsidiaries of the debtor). As a result of the foregoing, McDonald has the necessary background and experience to act as financial advisor to the Committee in the Debtors' cases.

11.     McDonald has not been retained in these cases by any entity other than the Committee, and will not represent any other party in these cases except the Committee.   No agreement exists, or will be made, to share any compensation received by McDonald for its services on behalf of the Committee with any unaffiliated person or firm. McDonald's proposed engagement is not prohibited by Rule 5002 of the Bankruptcy Rules because neither I, nor, to the best of my knowledge, any other employee of McDonald is related to any United States Bankruptcy Judge for the Middle District of Tennessee or to the United States Trustee for that district or any employee in the office thereof.

7

FURTHER AFFIANT SAYETH NOT.

David M. Powlen, Managing Director and
Co-Manager, Restructuring Group
McDONALD INVESTMENTS INC.
Mail Code OH-01-02-1645
800 Superior Avenue
Cleveland, Ohio 44114
Telephone:     216-563-2550
Facsimile:     216-563-2260

Affirmed before me this 19 day
of August, 2002

Notary Public

DEBRA D. B. COLEMAN
Notary Public, State of Ohio, Cuy. Cty.
My Commission Expires Dec. 19, 2003

8